### George W. Cobb, Appellee, v. Rosetta M. Sparr et al., On appeal of Rosetta M. Sparr, Appellant.

### Gen. No. 14,843.

1. PARTNERSHIP—*when inactive partner bound.* One inactive in the affairs of a partnership concern is bound by what an active partner, who has been entrusted with the care and management of the business, says and does with respect to the conduct and management of such business, and even though the claim is made that the property affected was individual property, yet such inactive partner would be bound if such property related to the firm property and business and if it appears that the proceeds thereof were used for the benefit of the firm.

2. PARTNERSHIP—*what amounts to ratification.* The receiving and retaining of the consideration of the transaction sought to be repudiated, is a ratification of the acts of the agent who effected such transaction.

3. INSTRUCTIONS—*when slight errors will not reverse.* Slight errors will not reverse if the result reached is just.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. THOMAS B. LANTRY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed February 15, 1910. Rehearing denied March 4, 1910.

**Statement by the Court.** George W. Cobb, appel-

lee, brought this action in *assumpsit* against Rosetta M. Sparr and Frank Weiss, copartners, defendants, to recover $5,000 as agreed compensation for information, advice and services in connection with the sale of certain real estate in the city of Chicago, owned by the defendants. Defendant Weiss filed a plea of the general issue. The defendant Sparr, in addition to her plea of the general issue, filed a special plea denying joint liability. On the trial of the cause the jury returned a verdict in favor of the plaintiff, assessing his damages at $5,373, being the alleged agreed compensation with interest. Judgment was entered on the verdict. Rosetta M. Sparr alone prosecutes this appeal.

The material facts shown by the record are that the defendants were owners of the real estate in question, each having a one-half interest therein. They were also copartners under the firm name of Spaar & Weiss, in "the business of manufacturing mouldings and generally in the buying of stock, manufacturing, selling and vending of all sorts of goods and commodities in connection with said business." As such copartners they were using and occupying the real estate for their business. By the terms of their copartnership they had each contributed an equal amount of property and assets to the capital stock of the firm. Weiss agreed to give his whole time and skill to the management of the business, but Mrs. Sparr was not obligated to render any service to or for the firm beyond such as she might choose to devote of her own free will and accord, but Charles L. Sparr, her son, was to represent and act for her in all firm matters, giving his whole time and skill to the business, and for this he received a stated compensation from the firm, and Weiss also received an equal amount as compensation for his services.

In the spring of 1906 the defendants desired to sell the real estate occupied by them. Weiss and Charles L. Sparr had been approached by Wyllys Baird, a real

estate broker and member of the firm of Baird & Warner, with the object of purchasing the real estate used and occupied by the firm in its business, and negotiations followed. Baird represented that he was buying for a manufacturer in Toledo, Ohio. The negotiations resulted in an oral agreement by which the defendants were to sell their property, including building, ground, and the machinery of the firm to the purchaser, represented by Baird, for $90,000, and the defendants were to pay Baird & Warner a commission of $3,500 for negotiating the sale, and were also to pay rent for the use and occupation of the property from the day of the sale in July to the first of May following.

At that time it appears that the defendants estimated their machinery as worth $15,000, and the value of the real estate at something over $86,000, and their fixtures which could not be detached from the building at about $3,500. The rental value of the property was about $827 per month.

While these negotiations were pending, or completed with the exception of signing a contract, W. E. Coulter, who was a broker working in the office of the plaintiff Cobb, where he had been employed for five or six years prior to this time, was informed of the proposed sale by John S. Ford, whose factory was in the neighborhood of the property in question. Coulter told Ford that he thought the price was low, and that he thought he could get Sparr and Weiss a better price. Thereupon Ford, who had known Weiss for many years, telephoned Weiss to come to his office and talk over the sale of the real estate, saying he could get a better price for the property than they had agreed to sell it for. Accordingly, the next day Weiss went to Ford's office and Coulter was called in. They talked over the sale of the Sparr & Weiss property. Weiss said that the papers had already been prepared for the sale at $90,000 with $3,500 to be paid to Baird & Warner for commissions, and that Charles Sparr, son and repre-

sentative of appellant, and general manager of the firm, had the papers in his pocket and was going to Baird & Warner's office that day to sign them. Coulter told Weiss he could get them $100,000 for the property, without the machinery, and they could reserve the use of the property free to the first of May following; and in view of the fact that he would get them a much larger price they would have to give him $5,000 as his commission. Coulter at this interview gave Weiss a paper, which Weiss calls a guarantee, in which Coulter gave a guarantee of $100,000 for the bare building and ground, and six months rent free. Weiss told Coulter that they would pay him $5,000 if he could secure them the price named by him. Weiss then returned to his office and Sparr did not go to Baird & Warner's office and sign the contract.

The day following this interview Charles Sparr and Weiss went to Ford's office and both Sparr and Weiss agreed with Ford that they would pay Coulter $5,000 commission in view of the fact that they were to get a larger price, and were saving the $3,500 commission to Baird & Warner.

Two days later Charles Sparr called at the office of plaintiff Cobb and saw Mr. Coulter. During their conversation Coulter gave to Sparr a paper stating in substance: "You will get $100,000 cash, your machinery free and clear, and rent free up to the 1st of May. Stick to this." The compensation to be paid Coulter was also spoken of in this interview between Sparr and Coulter.

Sparr and Weiss acted upon information and advice given them by Coulter, refused to close the trade with Baird & Warner at $90,000 and held out for the price of $100,000 and terms proposed by Coulter and finally sold the property on the exact terms and the price proposed by Coulter.

The defendant Weiss never disputed the obligation to pay the commission of $5,000. The defendant Rosetta M. Sparr claims that she had never authorized

the employment of Coulter nor agreed to it in any way, and refused to pay the commission.

HOWARD AMES, for appellant; EUGENE CLIFFORD, of counsel.

THOMAS TAYLOR, JR., and H. S. LUNDAHL, for appellees; THOMAS TAYLOR, JR., of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged that as a matter of fact the record fails to show (1) that the plaintiff Cobb performed any services or had any connection with the transaction resulting in the sale of defendants' property, and (2) that appellant assented to any employment of Coulter or Cobb or agreed to pay them or either of them the commission sued for.

As to the first of these contentions, the evidence shows that the plaintiff is a real estate broker in Chicago and that W. E. Coulter is one of the brokers who work in and from his office on the usual brokerage basis, doing business for the office and getting his commission out of the business transacted and closed by them; that Cobb gives Coulter a certain *per centum* of the commissions earned from the business brought into the office by him. Coulter had been employed in this manner five or six years prior to 1906, and was so employed while engaged in assisting in the sale of defendants' property. The evidence tends to show that Cobb was advised of what Coulter was doing in this sale at the time, and that Coulter reported to Cobb in regard to the transaction. In our opinion the evidence is sufficient to justify the finding of the jury on this question.

On the question of the employment of Coulter by the firm of Sparr & Weiss to give advice and services as claimed, the evidence, we think, leaves no reasonable ground of doubt. The evidence clearly preponderates in favor of the plaintiff on this question. It is not

claimed that appellant personally took any part in the transaction. The evidence shows that she did not, and it shows further that the only specific authority given to her son by appellant, in relation to the sale of the real estate, aside from his general authority to represent her in firm matters, was to go to the office of Baird & Warner and sign the contract already prepared for a sale of the property for $90,000. On this state of facts it is contended on behalf of appellant that the authority of one partner to bind his copartners extends only to acts within the scope of the business for the carrying on of which the copartnership was formed, and hence she was not bound by Weiss' action or by her son's action in the matter of the sale of the real estate owned by her.

With the general principle of law invoked we do not disagree. Its application to the facts of this case, however, does not command our assent for reasons which will appear later.

It clearly appears from the evidence that appellant was not bound to and did not give any of her time to the partnership business. By the articles of copartnership she was relieved from that, and her son Charles Sparr was made her representative and "acted for her in all firm matters." For this service he was paid $25 per week by the firm; and Weiss was paid the same salary. The intention of the copartners to substitute Charles Sparr for appellant in the conduct and management of the firm business is made clear by the copartnership agreement. Appellant must therefore be bound by what her agent and representative said and did in the conduct and management of the business and property of the firm.

While the real estate was owned by appellant and Weiss the articles of copartnership contemplated, and indeed expressly provided, that its business was to be carried on in the property, and the use of the property by the firm for its business was clearly contem-

plated and intended by the owners and copartners. In pursuance of that intention the firm had been and was in the actual occupation of the premises at the time of the negotiations and sale thereof here involved. Indeed, it may be that this real estate was for all practical purposes, and in equity if not in law, the property of the firm, though it is not necessary in this case for us to pass on that question. By the terms of the partnership agreement, each of the partners contributed to the firm the entire property and assets of the former firm, composed of A. Sparr and Frank Weiss, estimated at $135,699, with liabilities of $42,220.52 which were assumed by the new firm. Whether or not the real estate was included in this estimate is a matter of inference. In consequence of this situation, and of the proposed sale of the property for $90,000 to Baird & Warner or their purchaser, three things of considerable importance to the firm were involved, namely: the payment of rent by the firm until the following May, the sale of the machinery of the firm involved in the Baird & Warner proposition, and the interruption or close of the firm business in consequence of the sale of the firm machinery and the real estate. Clearly, Charles Sparr had authority to act in all matters involving the business or interests of the firm, and when by his action and that of Weiss he obtained the use of the property for the firm until the following May, and eliminated from the proposed sale of the real estate the firm machinery, thus saving it to the firm, he was acting in the interest of the firm and for its benefit, and his acts and Weiss' acts were valid and binding upon the firm. They were enabled to accomplish this and at the same time secure a larger price for the real estate, by the knowledge, advice and services of Coulter, who was retained and employed for that purpose. Furthermore, as a result of procuring the larger price for the real estate, $15,000 of the $100,000 was set apart to

pay incidental expenses and obligations of the firm. The firm thus secured the rent of the premises until the following May, retained its machinery, and received $15,000 in cash as the direct result of the knowledge, advice and services for which they agreed to pay $5,000. Where the real estate which is claimed to be the individual property of the members of a firm, is so clearly related to firm property and business as this real estate was, and the proceeds of it, as well as the property itself, were used for the benefit of the firm, the authority of Weiss, as a member of the firm, and of Charles Sparr as the general manager of the firm and representative of appellant, was sufficient, in our opinion, to bind appellant to the contract sued on in this case.

Appellant testified that she knew the property was sold for $100,000 and that she received her share of it; that she knew nothing about the machinery whether it was sold or not, but left every thing to her son, who acted for her in everything; that she knew nothing of the negotiation or sale of the property for $90,000. We find it difficult to believe that she knew nothing about the machinery as to whether it was sold or not, or that she knew nothing of the negotiation for the sale of the property at $90,000. The jury, doubtless, found the same difficulty. On the contrary, we think she knew all about the material features of the transaction, and the course of negotiations which led the defendants to suspend the proposed sale at $90,000 and stand out for the terms suggested by Coulter. And when appellant received her share of the $100,000 she knew exactly and fully how it was secured and by what agency, and was fully informed of all the material facts. The receiving and retaining of the consideration for the property was a ratification of the acts of her agent in her behalf.

Upon a review of the evidence we are satisfied that the verdict and judgment are amply sustained by it,

and that the judgment below is just and right.

We have carefully reviewed the instructions given by the court and the alleged errors made therein. As we have said above, the result reached in this case is in our opinion just. Slight errors in instructions in such a case should not cause a reversal. Henrietta Coal Co. v. Martin, 122 Ill. App. 354; Boys v. Bernhard M. Co., 138 *id.* 88. We find no errors in the instructions which could have affected the conclusions of the jury on the merits of the controversy. The judgment of the Municipal Court is affirmed.

*Affirmed.*